**Lisa Gelabert LADENHEIM, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**No. CIV. 99–1661(HL).**

United States District Court, D. Puerto Rico.

Aug. 28, 2000.

Melba N. Rivera–Camacho, Rivera Camacho & Associates, Carolina, Raymond L. Sanchez–Maceira, Santurce, PR, for Lisa Gelabert–Ladenheim, plaintiffs.

Angel Castillo, Morgan, Lewis & Bockius, Miami, Fl, Vivian Nunez–Rodriguez, Goldman Antonetti & Cordova, San Juan, PR, for American Airlines, Inc., defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

This lawsuit arises from Plaintiff Lisa Gelabert Ladenheim's ("Gelabert") dissatisfaction with Defendant American Airlines, Inc.'s ("American") efforts to accommodate her physical limitations. Gelabert

brings suit under the Americans with Disabilities Act, alleging that American failed to provide her a reasonable accommodation and that American retaliated against her for filing an EEOC charge. See 42 U.S.C.A. § 12101 et seq. (West 1995) ("ADA").[1] Gelabert has also invoked this Court's supplemental jurisdiction to bring a claim under P.R. Laws Ann. tit. 1, § 501 (1982) ("Law 44"). See also 28 U.S.C.A. § 1367 (West 1993).

American has filed a motion for summary judgment and a reply, Dkt. Nos. 37 and 45, and Gelabert has filed an opposition and a sur-reply, Dkt. Nos. 42 and 49. For reasons that follow, American's motion for summary judgment is granted.

### Standard for Summary Judgment

The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining if a material fact is "genuine," the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir.1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact." *Crawford–El*, 523 U.S. 574, 118 S.Ct. 1584, 1598 n. 22, 140 L.Ed.2d 759 (1998) (quoting *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed. R.Civ.P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir.1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). These specific facts must demonstrate the existence of a genuine issue of material fact "as to each issue upon which [the nonmovant] would bear the ultimate burden of proof at trial." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir.2000) (citing *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505).

Of course, the Court draws inferences and evaluates facts "in the light most favorable to the nonmoving party." *Leary*, 58 F.3d at 751 (1995). Still, even in discrimination cases, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the discrimination claim. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### Statement of Facts

On June 2, 1986, Gelabert started working for American as a passenger services agent. On May 4, 1993, Gelabert sustained an injury to her left hand, for which she was treated by the State Insurance Fund. After her treatment, Gelabert returned to work and was assigned to a temporary light duty position as a "curbside area" employee. On March 20, 1995, when it had become clear that Gelabert's injury had resulted in her permanent impairment with Carpal Tunnel Syndrome ("CTS"), American removed her from the temporary curbside position. American then told Gelabert that until it could find

---

1. Although Gelabert has cited to Title VII of the Civil Rights Act of 1964 in support of her claim of retaliation, the Court assumes that

Gelabert intends to rely on the specific prohibition on retaliation contained in the ADA. See 42 U.S.C.A. § 12203(a)-(c) (West 1995).

her a permanent light duty position, Gelabert needed to take her remaining vacation. Upon finishing her accrued vacation time, Gelabert was to be put on unpaid sick leave.

In July of 1995, Gelabert applied for a position in "Special Services," a light duty position which her CTS would allow her to perform. American did not hire Gelabert for the job. Subsequently, in February of 1996, Gelabert applied for a light duty position at American's "Platinum Desk." Once again, American hired another applicant instead of Gelabert. Finally, in May of 1996, American offered Gelabert a position in reservations. Feeling that her physical limitations prevented her from being able to perform the job's essential functions, Gelabert rejected the position. After filing a charge with the Equal Employment Opportunity Commission ("EEOC"), Gelabert filed this lawsuit on June 15, 1999.

### Discussion

The determining issue presented in this employer-employee controversy under the ADA and pivotal to its resolution is whether American provided Gelabert with a reasonable accommodation. The Court limns the legal landscape, parses the record, and finds that Gelabert has failed to establish a claim for failure to provide a reasonable accommodation.

#### 1. Claim for Failure to Provide Reasonable Accommodation

Gelabert's first claim is that American discriminated against her in violation of the ADA by failing to provide a reasonable accommodation for her alleged disability. Before turning to the evidence, the Court shall take a moment to reemphasize the framework used to make out a claim based on failure to accommodate, as distinguished from a claim based on, for example, discriminatory discharge.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability ...." *Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir.1998) (quoting 42 U.S.C. § 12112(a)). The ADA also pro-

vides that "the term discriminate includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ..., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir.1999) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Unlike a claim for discriminatory discharge, Gelabert's claim for failure to accommodate is not subject to the framework first set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Higgins*, 194 F.3d at 264. Thus, the question of whether Gelabert has made out a prima facie case of discrimination is not at issue here, either. The *McDonnell Douglas* burden-shifting approach is simply "inapposite in respect to such claims." *Higgins*, 194 F.3d at 264. Instead,

> [t]o survive a motion for summary judgment on a failure-to-accommodate claim, a plaintiff ordinarily must furnish significantly probative evidence that he is a qualified individual with a disability ...; that he works (or worked) for an employer whom the ADA covers; that the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations; and that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment.

*Higgins*, 194 F.3d at 264. See also, *Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 30 (1st Cir.2000) (quoting *Higgins*, 194 F.3d at 264); *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 n. 9 (1st Cir.2000) (noting that the defendant's "argument that there was no intent to discriminate based on disability misses the important point that the ADA does more than prohibit disparate treatment. It also imposes an affirmative obligation to provide reasonable

accommodation to disabled employees."). As is readily apparent from this formulation, "no proof of a particularized discriminatory animus is exigible" in a claim for failure to provide reasonable accommodation. *Id.* Once a plaintiff has created a genuine issue of material fact as to each of these four steps, a defendant's motion for summary judgment will be denied, unless the defendant can show that the plaintiff's proposed accommodation would create an undue hardship for the defendant's business. *Id.* In the instant case, neither party has raised the issue of undue hardship.[2] Thus, the Court focuses solely on the four-step inquiry.

Gelabert's first task is to put forward evidence sufficient to allow a reasonable jury to conclude that she is a "qualified individual with a disability." Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Criado,* 145 F.3d at 441 (quoting 42 U.S.C. § 12111(8)). The parties do not dispute that Gelabert is incapable of performing the essential functions of her original job as a passenger services agent. Neither do they dispute, however, that Gelabert is fully capable of performing the essential functions of the two positions for which she applied and was rejected. Thus, assuming, *arguendo,* that Gelabert's reassignment to either of the two positions for which she applied and was rejected constitutes a reasonable accommodation, Gelabert is a qualified individual.

There being no dispute as to Gelabert's status as a qualified individual, Gelabert must put forth evidence that she is disabled. The parties disagree on this matter. To show that she is disabled, Gelabert must adduce evidence demonstrating that she has "a physical or mental impairment that substantially limits one or more of [her] major life activities .…" *Santiago Clemente,* 213 F.3d at 30 (quoting 42 U.S.C. § 12102(2)(A)).

To establish that she is disabled, Gelabert's first task is to present evidence that she suffers from a physical or mental impairment. Without a doubt, Gelabert suffers from a physical impairment: CTS. See *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 9 & n. 5 (1st Cir.1999) (holding that "[a]lthough CTS may not prove to be a 'disability' in all cases, undoubtedly it is an ADA 'impairment'"). In fact, the parties do not dispute this matter.

The parties contest whether Gelabert's impairment substantially limits one or more of her major life activities. Gelabert contends that she is substantially limited in the major life activity of working. See 29 C.F.R. § 1630.2(1) (including "working" as a major life activity).[3] In *Sutton v. United Airlines, Inc.,* the Supreme Court clarified what the statutory phrase "substantially limits" means with respect to the major life activity of working. For a plaintiff properly to allege a substantial limitation in his ability to work, he must "allege [that he is] unable to work in a broad class of jobs." *Sutton,* 119 S.Ct. at 2151. The Supreme Court in *Sutton* relied on the EEOC regulations defining the expression

---

2. Because neither party has discussed the question of undue hardship, the Court shall address only the reasonableness of the proposed accommodations. For purposes of this Opinion and Order, the Court shall treat the reasonableness question as a separate inquiry from the question of undue hardship. Following the First Circuit's lead, the Court shall refrain from joining "the debate in the circuits on the relationship between the two concepts of undue hardship and reasonable accommodation." *Garcia–Ayala,* 212 F.3d at 648 n. 13.

3. The Court, like the Supreme Court, notes that "[b]ecause the parties accept that the term 'major life activities' includes working, we do not determine the validity of the cited regulations. We note, however, that there may be some conceptual difficulty in defining 'major life activities' to include work .…" *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2151 (1999).

"substantially limits" in the context of working. These regulations interpret "substantially limits" to mean

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Sutton,* 119 S.Ct. at 2151 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). See also *Murphy v. UPS,* 527 U.S. 516, 119 S.Ct. 2133, 2138, 144 L.Ed.2d 484 (1999) (same).

The inquiry does not end there, however. A court should also consider "the geographical area to which the individual has reasonable access, and 'the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified.'" *Sutton,* 119 S.Ct. at 2151 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(A), (B)). Finally, the Supreme Court declared in *Sutton* that "[t]o be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Id.*

■ Before considering whether Gelabert has put forth sufficient evidence to show that she is substantially limited in her ability to work, it is important to point out that the question of substantial limitation is a question of fact properly decided by the jury. See *Santiago Clemente,* 213 F.3d at 32. Thus, Gelabert need only present enough competent evidence to allow a reasonable jury to find that she is substantially limited in the major life activity of working.

According to American, because Gelabert is capable of performing a wide array of daily tasks, including her household chores, she is as a matter of law not substantially limited in the major life activity of working. This argument is legally flawed. American also asserts that Gelabert is only incapable of performing one job: intense typing. This assertion is contradicted by Gelabert's evidence.

Simply because Gelabert is capable of carrying on a large number of activities, she is not precluded from arguing that she is substantially limited in the major life activity of working. She may still be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Sutton,* 119 S.Ct. at 2151. In fact, Gelabert alleges that she is significantly restricted in her ability to type for more than 45 minutes, to grasp, to write, to push, to pull, and to lift. Such restrictions are clearly sufficient to ground a reasonable jury's conclusion that Gelabert is significantly restricted in her ability to perform a broad range of jobs. See *Quint,* 172 F.3d at 11 (stating that "[t]he inability to lift heavy objects and perform repetitive manual tasks can translate across a broad spectrum of physically demanding jobs"). Further, Gelabert supports her allegations of restrictions with competent evidence in the form of a doctor's report and deposition testimony.[4] Dkt. No. 42, Exhibits 2, 5, & 15.

This evidence flatly contradicts American's assertion that Gelabert is only limited in her ability to perform intense typing. Further, American's argument that Gelabert admits in her deposition that she is limited only in her ability to do intense typing is simply unsupported by Gelabert's deposition. See Dkt. No. 45 (citing Dkt. No. 37, Tab A, 67–68). Thus, Gelabert has created a genuine issue of material fact regarding her being significantly restricted in her ability to perform a wide range of jobs. Accordingly, the Court finds that there is a genuine issue of material fact as to whether Gelabert is disabled, i.e., whether she is substantially limited in her ability to perform the major life activity of

4. The Court notes that the First Circuit has pointed out, "[n]or is the burden of proof incumbent upon an ADA plaintiff in relation to this element particularly formidable." *Quint,* 172 F.3d at 12.

working. Having created a genuine issue as to her status as a qualified individual with a disability, Gelabert must next show that she worked for an employer whom the ADA covers. The parties do not dispute that American is a "covered entity" under the ADA.

Third, Gelabert must show that despite knowing of her physical limitations, American failed to provide her with a reasonable accommodation. The parties do not dispute that American knew of Gelabert's physical limitations. Thus, the crucial issue is whether American provided Gelabert with a reasonable accommodation.

■ The burden of showing that a reasonable accommodation exists rests squarely on the plaintiff's shoulders. *Garcia–Ayala*, 212 F.3d at 648; *Feliciano v. State of R.I.*, 160 F.3d 780, 786 (1st Cir. 1998). Thus, Gelabert must present evidence sufficient to allow a reasonable factfinder to conclude that the accommodation to which she points is reasonable.

■ Throughout Gelabert's filings in this case, she only proposes two accommodations: the two jobs for which she applied and was rejected. See Dkt. Nos. 1, 42, & 49. According to Gelabert, because American failed to give her either of these two jobs, American failed in its duty to give her a reasonable accommodation. Neither party disputes that when Gelabert applied for the Special Services[5] and Platinum Desk positions, they were vacant. Further, neither party disputes that Gelabert was at least minimally qualified to perform those jobs. Finally, there is no dispute that American hired applicants other than Gelabert on the basis of American's judgment that those applicants were more qualified for the positions than was Gelabert.

Under the ADA, reasonable accommodation may include "reassignment to a vacant position." *Feliciano*, 160 F.3d at 786

(quoting 42 U.S.C. § 12111(9)(B)); *Criado*, 145 F.3d at 443. On the other hand, the parties agree that a plaintiff is not entitled to be reassigned to the position of his choice. See *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir.1996). Further, "the ADA does not mandate a policy of 'affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled person [sic] be given priority in hiring or reassignment over those who are not disabled.'" *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 700 (7th Cir. 1998) (quoting *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995)).

The essence of Gelabert's claim for failure to accommodate is that because she wanted the vacant Special Services and Platinum Desk jobs and was qualified for them, American's failure to hire her for those jobs amounted to a failure to accommodate her disability in violation of the ADA. American responds that the ADA does not require an employer to reassign a disabled employee to a position for which, in the employer's judgment, the disabled employee is not the most qualified applicant. The Court agrees.

Gelabert's burden includes more than just proposing an accommodation for her disability. She must propose a *reasonable* accommodation. Holding an employer liable for violating the ADA simply because that employer hired the most qualified applicant for the position in question can hardly be considered reasonable. See *Soto–Ocasio v. Federal Exp. Corp.*, 150 F.3d 14, 19 (1st Cir.1998) (stating that "cases involving reasonable accommodation turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior" and quoting *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 515 (1st Cir.1996)). In fact, no reasonable jury could find a violation of American's duty to provide a reasonable accommodation on these facts.[6]

---

5. American asserts that any claim relating to the Special Services position is time-barred. The Court views this assertion with some doubt but declines to rule on it in light of its disposition of Gelabert's claim.

6. The issue of the reasonableness of a proposed accommodation is normally a question

■ Besides arguing that she was entitled to the two jobs for which she was rejected, Gelabert also asserts that American did not properly engage in an interactive process with her to find her a new position. Specifically, Gelabert contends that during her search for a new position with American, the company's Human Resources Senior Representative, Maria Ramos Salgado ("Ramos"), failed to keep in touch with Gelabert by telephone. Instead, it was Gelabert who was forced to make calls to Ramos to inquire after the status of American's attempts to place Gelabert in a new position with the company. American does not directly contest this factual assessment. On the other hand, the undisputed facts show that American assigned Ramos to assist Gelabert in the process of finding another job with the company. Both sides agree, further, that American offered to relocate Gelabert to another city to improve her chances of finding an acceptable position. Ramos rejected this proposal.

The parties also agree that American offered Gelabert a job as a Sales and Service Representative and that Gelabert turned it down. Gelabert did so in part because she believed that the position made physical demands of her that her medical restrictions would not allow. American contends that because of the 15–minute breaks that are a part of the job, Gelabert was capable of meeting the job's requirements. Gelabert contends that American never informed her that the job provided regular 15–minute breaks. Dkt. No. 42, Exhibit 12(a). Presumably, Gelabert relies on this contention to bolster her argument that American failed to participate fully in the process to find Gelabert a reasonable accommodation.

Whether American told her about the 15–minute breaks or not, nowhere does Gelabert allege that she offered American her reasons for turning down the offered position. Without this information, American could hardly be faulted for failing to offer Gelabert unsolicited information about the details of the job's break schedule. The search for a reasonable accommodation is an interactive process between employee and employer. See *Garcia–Ayala*, 212 F.3d at 648 n. 12 (pointing out that the reasonable accommodation effort is an "interactive process"); *Lessard v. Osram Sylvania, Inc.*, 175 F.3d 193, 199 n. 9 (1st Cir.1999) (same); *Soto–Ocasio*, 150 F.3d at 19 (same); *Criado*, 145 F.3d at 444 (same); *Jacques*, 96 F.3d at 514 (same); *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 33 (1st Cir.1996) (same). Gelabert even asserts that it was her obligation to inform American whether she could perform the job's essential functions. Dkt. No. 42. Thus, Gelabert has failed to allege or to provide any evidence that she participated in an interactive process with American regarding the Sales and Service Representative position.

Gelabert's only real dissatisfaction with American's attempts at reasonable accommodation, other than her being rejected for her two preferred jobs, is that she called Ramos on a regular basis, rather than vice-versa. This is simply not enough to allow a reasonable jury to conclude that American failed to engage in an interactive process with Gelabert to find a reasonable accommodation.[7] Still, Gelabert claims

---

of fact. See *Garcia–Ayala*, 212 F.3d at 649 (stating that a request for an extended leave could on certain facts preclude a "reasonable factfinder" from finding the request to be a reasonable accommodation); *Criado*, 145 F.3d at 444 (pointing out that "the jury could find [the plaintiff's] request a reasonable accommodation"). Gelabert has failed to create a *genuine issue of material fact* on this matter, though, because her only proposed accommodations were the two jobs that she wanted but for which she was not hired. Again, no reasonable factfinder could conclude that the

duty to provide a reasonable accommodation includes hiring a less-qualified employee simply because that employee is disabled.

7. Gelabert claims that there is a factual dispute as to whether Ramos offered her a "position in ramp." Dkt. No. 42. Gelabert fails to explain for what purpose she makes this assertion. Gelabert simply cites to Ramos' deposition, in which Ramos says that Gelabert was never offered such a position. See Dkt. No. 42, Exhibit 14. Gelabert neither makes clear whether she disputes this statement nor offers any evidence on this matter. Thus,

that because she was not hired for either of her two preferred jobs, American is liable under the ADA for failure to accommodate her disability. This claim fails and is hereby dismissed with prejudice.[8]

### 2. Retaliation Claim

■ Gelabert also brings a claim for retaliation in violation of the ADA. See 42 U.S.C.A. § 12203(a)-(c) (West 1995). In response, American argues that Gelabert's retaliation claim was never included in any administrative charge and thus must be dismissed. Gelabert fails to oppose this asseveration. Further, her administrative charge does indeed fail to include a claim of retaliation. See Dkt. No. 37, Tab D.

The First Circuit has made clear in the Title VII context that "[t]he purpose of [the charge-filing] requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996); *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir.1990). This same reasoning applies to claims brought under the ADA. See *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 (1st Cir.1999) (holding that "the ADA mandates compliance with the administrative procedures specified in Title VII" and citing 42 U.S.C. § 12117).

■ The guiding principle is that "[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Powers*, 915 F.2d at 38 (quoting *Less v. Nestle Co.*, 705 F.Supp. 110, 112 (W.D.N.Y.1988)). Further, a claim can only proceed if it is "like or reasonably related to the allegations of the charge and grow[s] out of such allegations." *Id.* (quoting *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 544 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989)). A

plaintiff in his administrative charge must "describe the essential nature of the claim and . . . identify the core facts on which it rests." *Id.* Gelabert's failure to include a claim of retaliation or any facts supporting such a claim in her administrative charge requires that her retaliation claim be dismissed with prejudice.

### 3. Local Law Claim

■ The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed. *Id.* at 726, 86 S.Ct. 1130; *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir.1990); *Soto v. Carrasquillo*, 878 F.Supp. 324, 332 (D.P.R.1995), *aff'd sub nom. Soto v. Flores*, 103 F.3d 1056 (1st Cir.1997). Because the Court has dismissed Gelabert's ADA claims, the Court hereby dismisses without prejudice her Law 44 claim.

**IT IS SO ORDERED.**

■

Gelabert's claim of a factual dispute on this matter has no effect on the Court's disposition of this case.

8. Because Gelabert has not adduced evidence sufficient to allow a reasonable jury to find

that American failed to provide a reasonable accommodation, the Court need not inquire into the fourth step of the failure-to-accommodate analysis: whether the failure to accommodate affected the terms, conditions, or privileges of Gelabert's employment.