**Abraham Calderon SIACA, Plaintiff,**

v.

**AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO, et al., Defendants.**

No. 00–2083(DRD).

United States District Court, D. Puerto Rico.

July 31, 2001.

Claudio Aliff–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, Ayleen Charles, San Juan, PR, for defendant.

Nicolas Nogueras–Cartagena, San Juan, PR, for plaintiff.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is defendant Autoridad de Acueductos y Alcantarillados' ("AAA"), Motion to Dismiss the Amended Complaint filed, on November 16, 2000.[1] (Docket No. 8). Plaintiff opposed said motion on December 18, 2000. (Docket No. 12). Thereafter, defendant filed a Reply to Plaintiff's Opposition on February 26, 2001. (Docket No. 22). For the following reasons, defendant AAA's Motion to Dismiss the Amended Complaint is **GRANTED in part** and **DENIED in part**.[2]

---

1. On October 11, 2000, defendant Autoridad de Acueductos y Alcantarillados ("AAA") filed a Motion to Dismiss plaintiff's complaint. (Docket No. 3). Plaintiff filed a motion submitting an amended complaint on November 2, 2000. (Docket No. 7). Plaintiff's leave to file the amended complaint (Docket No. 7) is **GRANTED.** Subsequently, on November 16, 2000, defendant AAA filed a Motion to Dismiss the Amended Complaint. (Docket No. 8). In light of the fact that plaintiff filed an amended complaint and defendant filed a second Motion to Dismiss addressing the allegations presented by plaintiff in the amended complaint, the Court considers AAA's first Motion to Dismiss (Docket No. 3) to be **MOOT.** Therefore, the Court will only address AAA's Motion to Dismiss the Amended Complaint. (Docket No. 8).

2. Defendant AAA's Motion to Dismiss for Lack of Prosecution (Docket No. 13) and second Motion to Dismiss for Lack of Prosecution (Docket No. 20) are hereby **DENIED.** Plaintiff filed an opposition to defendant's Motion to Dismiss on December 18, 2000. Additionally, defendant AAA's Motion Requesting Permission to Withdraw as Legal Counsel for Defendants is **GRANTED.** Defendant AAA is granted **thirty (30) days** from

## I. MOTION TO DISMISS STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in the plaintiff's favor. *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996); *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Dismissal is appropriate only when the facts alleged, taken as true, do not justify under any theory of recovery for the plaintiff. Fed. R.Civ.P. 12(b)(6). Thus, in order to survive a motion to dismiss, plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in the plaintiffs' favor, this Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson,* 83 F.3d at 3.

Moreover, when considering a motion to dismiss under Rule 12(b)(6), "our focus [must be] limited to the allegations of the complaint." *Litton Indus., Inc. v. Colón,* 587 F.2d 70, 74 (1st Cir.1978)(internal quotations omitted). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." *Id. See also Doyle,* 103 F.3d at 190. In *Wagner v. Devine,* 122 F.3d 53 (1st Cir.1997), the First Circuit held that a Court must "affirm a dismissal for failure to state a claim only if it clearly appears that, on the facts alleged, the plaintiff cannot recover on any viable theory." *Id.* at 55. The Supreme Court decades ago explained in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* at 45–46, 78 S.Ct. 99. With the above stated standard in mind, all of the facts alleged in the complaint are accepted as true. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989); *Gooley,* 851 F.2d at 514.

## II. DISCUSSION

In the amended complaint, plaintiff alleges that defendant AAA violated his rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.; Titles I and V of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 and 12203, et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d), et seq.; 42 U.S.C. § 1983; First, Fifth and Fourteenth Amendments of the United States Constitution and Puerto Rico anti-discrimination laws. Defendant avers plaintiff's amended complaint should be dismissed, because plaintiff has failed to plead sufficient facts to establish a cause of action under each of the aforementioned statutes and constitutional amendments. The Court will now address defendant's contentions.

### A. Failure to Exhaust Administrative Remedies

 The ADA, ADEA and Title VII mandate "compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e." *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 277 (1st Cir.1999). "[S]uch compliance must occur before a federal court may entertain a suit that

receipt of this Opinion and Order to acquire and announce new legal representation.

seeks recovery for an alleged violation [under the ADA, ADEA and Title VII]." *Id.* In fact, 42 U.S.C. § 2000e–5(e), in pertinent part states that a charge shall be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within three hundred days if "the person aggrieved has initially institutionalized proceedings with [an authorized] State or local agency" or "within thirty days after receiving notice that the State or local agency has terminated the proceedings with a State or local agency, whichever is earlier."

■ Defendant avers that plaintiff's claims under the ADEA and Title VII should be dismissed, because plaintiff failed to include the aforementioned causes of action in his EEOC charge. Defendant is correct. The purpose of filing an administrative claim for discrimination is to provide defendants with "prompt notice of claims and to create an opportunity for early conciliation." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996). Further,

"That purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and

later allege something entirely different in a subsequent civil action. Consequently, we have stated that, in [cases involving discrimination], 'the scope of the civil complaint is ... limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of the charge.'"

*Id.* (citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir.1990)). *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970). Although compliance with administrative remedies is not a jurisdictional prerequisite, nevertheless, plaintiff may not circumvent the requirement. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 757, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

■ The ADEA and Title VII claims filed by plaintiff in the above captioned case against defendants were not included in the administrative claim filed with the EEOC or have been listed in the right to sue letter issued by the EEOC.[3] Therefore, plaintiff's ADEA and Title VII claims against defendants must be **DISMISSED** for failure to exhaust administrative remedies.[4]

---

**3.** The Court notes that plaintiff may assert a claim for employment discrimination under both, Title VII and 42 U.S.C. § 1983. *See Bradley v. Pittsburgh Board of Education*, 913 F.2d 1064, 1078–79 (3d Cir.1990) (collecting cases); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573–76 (5th Cir. 1989); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 623–24 (7th Cir.1986); *Johnson v. Walgreen*, 980 F.2d 721, 1992 WL 357828 (1st Cir.1992) (table case). Moreover, plaintiff's failure to exhaust administrative remedies under Title VII does note preclude the filing of a suit under section 1983. *Bey v. Schneider Sheetmetal, Inc.*, 603 F.Supp. 450, 452 (W.D.Pa.1985); *Suhr v. North Carolina State University Agricultural Research Service*, 1987 WL 5853 (E.D.N.C.) (stating that "dismissal

of the Title VII action does not preclude trial on the § 1983 claims").

**4.** Plaintiff's complaint is devoid of any facts establishing a cause of action under the ADEA. Plaintiff does not state what his age is, in order to establish that he is a member of a protected class. Moreover, plaintiff does not even make one single allegation that he met the legitimate job expectations or that the employer did not treat neutrally. In addition, nowhere in the complaint or plaintiff's opposition is there any averment from the part of plaintiff that defendants discriminated against him on the basis of race, color, religion, gender, or national origin—the practices outlawed by Title VII. *See* 42 U.S.C. § 2000e–2(a). Further, nowhere in the complaint does plaintiff clearly establish which of the differ-

## B. The ADA Claim

 The ADA prohibits an employer to discriminate against a qualified individual covered under the Act on the basis of his/her disability. 42 U.S.C. § 12112(a). Under the ADA, "no covered entity shall discriminate against a qualified individual with a disability because of the disability ..." *Ladenheim v. American Airlines, Inc.* 115 F.Supp.2d 225, 228 (D.P.R.2000) (citing *Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir.1998)). Further, pursuant to the ADA, "the term discriminate includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ..., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id.* (citing *Higgins v. New Balance Athletic Shoe, Inc.* 194 F.3d 252, 264 (1st Cir.1999)). Contrary to a claim of discrimination, a claim for failure to provide reasonable accommodation, as in this case, is not contingent on the framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The reason is that said burden-shifting framework is "simply 'inapposite in respect to such claims.'" *Ladenheim*, 115 F.Supp.2d at 228.

 In a failure to accommodate claim, plaintiff has to "furnish significantly probative evidence that he is a qualified individual with a disability ..., that he works (or worked) for an employer whom the ADA covers; that the employer, despite knowing of the employee's physical

or mental limitations, did not reasonably accommodate those limitations; and that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment." *Ladenheim,* 115 F.Supp.2d at 228 (citing *Higgins,* 194 F.3d at 264). Unlike other interpretations of the word "discriminate," this interpretation does not require the employer's action be roused by a discriminatory animus directed at plaintiff's disability. *Id.* Hence, an employer who has knowledge of an employee's disability and fails to make reasonable accommodations violates the statute, irrespective of intent, unless the employer proves that the proposed accommodations constitute undue hardship. *See* 42 U.S.C. § 12112(b)(5)(A); *see also Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1300 (D.C.Cir.1998) (en banc).

 The Court, accepting as true all well-pleaded factual claims, and indulging all reasonable inferences in the plaintiff's favor, finds that plaintiff has pleaded enough facts to establish a cause of action under the ADA. *See Doyle,* 103 F.3d at 190; *Aulson,* 83 F.3d at 3. First, defendants do not dispute that he is a qualified individual for purposes of the statute. Plaintiff asserts in the complaint that he is a "Certified Engineer" who has been working for defendant for the last thirteen years. (Docket No. 7).

Second, plaintiff has asserted that he has a "physical or mental impairment that substantially limits one or more of [his] major life activities ..." *Santiago Clemente v. Executive Airlines, Inc.,* 213 F.3d 25, 30 (1st Cir.2000). The EEOC has issued regulations to provide additional

---

ent categories of discrimination addressed in 42 U.S.C. § 2000e–2(a), he has been a victim of on the part of defendants. Even if the Court identifies a cause of action for on any of the types of discrimination outlawed by Title VII, the Court must conclude that plaintiff has

failed to plead enough facts to establish a prima facie case under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden shifting framework for race, color, religion, gender or national origin discrimination.

guidance regarding the proper interpretation of the term "major life activity." 29 CFR § 1630.2(g) (1998). The EEOC regulations define the three elements of disability: (1) physical or mental impairment, (2) substantially limits, and (3) major life activities. *See id.,* at §§ 1630.2(h)-(j). Under the regulations, a "physical impairment" includes "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, **respiratory** (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine." § 1630.2(h)(1) (emphasis ours). The term "substantially limits" means, among other things, "[u]nable to perform a major life activity that the average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." § 1630.2(j). Finally, "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, **breathing,** learning, and working." § 1630.2(i) (emphasis ours).

Plaintiff avers suffering from "continuous nasal congestion, hyperemia, throat granules, sinus pains, being nodale, chronic sinusitis, rhnogaringetis, respiratory and skins problems." (Docket No. 7). Hence, the Court concludes that plaintiff has established that he suffers a physical impairment affecting his respiratory system and/or a disability affecting the major life

activity of "breathing." *See* 29 CFR § 1630.2(g).

 Finally, plaintiff has pleaded sufficient facts to establish that the employer "did not reasonably accommodate those limitations; and that the employer's failure to do so affected the terms, conditions, or privileges of the plaintiff's employment." *Ladenheim,* 115 F.Supp.2d at 228 (citing *Higgins,* 194 F.3d at 264). Defendants do not contest that they knew of plaintiff's physical limitations. Moreover, plaintiff avers that defendants refused to provide plaintiff a reasonable accommodation. In fact, plaintiff states that "[n]otwithstanding Plaintiff Complaints of his illness, respiratory problems short of breath, skin irritation ... defendant insisted in keeping him working at that site, with no protection or other safety measures, subject to being disciplined or fired by said defendants." (Docket No. 7). Further, plaintiff avers that "Defendants had knowledge of Plaintiff's disability and ignored their duty to reasonably accommodate him." (Docket No. 7). The Court need not go further. Plaintiff has pleaded sufficient facts that when "read liberally" and taken as true establish a cause of action under the ADA.[5] *See Litton Indus., Inc.,* 587 F.2d at 74. Accordingly, defendant's request for the dismissal of plaintiff's ADA claim is **denied.**

## C. The Retaliation Claim

 Generally, the basis of a retaliatory claim under the ADA "is that plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Sifre v. Department of Health,* 38

---

5. Civil rights complaints are to be liberally construed. *See Buckey v. County of Los Ange-* *les,* 957 F.2d 652 (9th Cir.1992).

F.Supp.2d 91, 101 (D.P.R.1999) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 386–87 (6th Cir.1999)). The ADA anti-retaliation provision states:

"No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter."

42 U.S.C. § 12203. Additionally, "[a] plaintiff need not have succeeded on his or her claim of disability to assert a claim for retaliation." *Sifre*, 38 F.Supp.2d at 102.

"The First Circuit, in analogizing Title V of the ADA to the Title VII context, has required plaintiff bringing a claim of retaliation to show: (1) that he or she was engaged in protected conduct; (2) that he or she was discharged, and; (3) that there was a casual connection between the discharge and the conduct." *Sifre*, 38 F.Supp.2d at 102. *See Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997). The ADA prohibits discrimination based on disability in employment, by public entities in relation to services, programs, benefits or activities.[6] Further, "[p]rotected conduct under the ADA that has been found to be sufficient to state a claim for retaliation includes: requesting accommodation for a disabled person; ... and the filing of an EEOC charge." *Sifre*, 38 F.Supp.2d at 102 (internal citations omitted).

Plaintiff has been able to set enough facts to support a claim of retaliation. First, in this case, plaintiff avers requesting defendants at numerous times for a reasonable accommodation. (Docket No. 7). Therefore, plaintiff engaged in protected conduct. *See Sifre*, 38 F.Supp.2d at 102 (finding that the request for a reasonable accommodation constitutes protected conduct).

Second, plaintiff pleads that "defendant insisted in keeping him working at that site, with no protection or other safety measures, subject to being disciplined or fired by said defendants" and was denied by defendants "promised salary increases," "the position of Assistant Regional Director of Construction," and "offices, drinking water, office equipment and telephone." (Docket No. 7). Further, plaintiff claims that he was allegedly transferred "several times to other working areas without office space or facilities, harassed and insulted," as well as physically and emotionally threatened. (Docket No. 7). Therefore, plaintiff satisfies the second prong of the retaliation prima facie case, by establishing that he suffered adverse employment actions after he engaged in the protected conduct.

Finally, plaintiff has plead enough facts to establish that there might be a causal connection between the discharge and the protected conduct. Plaintiff claims that the employer's alleged "reprisals" against him took place after plaintiff had requested reasonable accommodation, after voicing "criticisms of [defendants']

---

**6.** "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. In addition, § 12182 in pertinent part states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

violation[s] of federal and local environmental laws" and filed "complaints" with the employer. (Docket No. 7).

The Court, in making all reasonable inferences in favor of plaintiff, finds that the facts presented raise an inference of retaliation. Additionally, the facts presented raise issues of motive and intent as to the grounds for the employment related actions undertaken by defendant as to plaintiff. Therefore, based on the above stated reasons, the Court **denies** defendant's motion to dismiss as to the issue of retaliation.

### D. The Section 1983 Claim

 It is settled law in the First Circuit that a civil rights action must be specifically pleaded to withstand a motion to dismiss under Fed. R. Civ. P 12(b)(6). *Gilbert v. City of Cambridge*, 932 F.2d 51 (1st Cir.1991); *Pérez v. Autoridad de Energía Eléctrica de Puerto Rico*, 741 F.Supp. 23 (D.P.R.1990); *Johnson v. General Electric*, 840 F.2d 132, 138 (1st Cir. 1988). "Section 1983 expressly embraces actions to redress 'deprivation[s, under color of state law,] of . . . rights, privileges, or immunities secured by the Constitution.'" *Pontarelli v. Stone*, 930 F.2d 104, 114 (1st Cir.1991). It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements: (1) that the defendant acted under color of state law, *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); (2) that the plaintiff was deprived of federally protected rights, privileges, or immunities, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation.

*Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir.1989); *Rizzo v. Goode*, 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). A plaintiff must "avoid tarring defendants' reputations unfairly" and that in order to "prevent potential abuses, [courts] have consistently required plaintiffs to outline facts sufficient to convey specific instances of unlawful discrimination." *The Dartmouth Review*, 889 F.2d at 16. Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants' actions were a cause in fact or a proximate cause of plaintiff's injury. *See Collins v. City Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985).[7]

### 1. Unsafe Working Conditions

 The Court, after engaging in a liberal reading of the complaint, taking the alleged facts as true and indulging all reasonable inferences in favor of plaintiff, as the Court must under the motion to dismiss standard, finds that plaintiff's claims against defendants under section 1983, specifically, for unsafe working conditions must be dismissed. Plaintiff states in the complaint that "Defendants since 1997 and up to the present time have engaged in a pattern of discriminatory conduct against Plaintiff subjecting him to work where his health would be endangered, subjecting him to derogatory and offensive remarks, threats and reprisals, and conspired between themselves to deprive plaintiff of his constitutional right, liberty and property, for his exercise of his right to free speech, and to demand protection to his health and that of the consumers of defendant's services, depriving him also Plaintiff (sic) of his right to due process of law, to his life,

---

**7.** First, in *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172, the Supreme Court held that plaintiffs need not exhaust state administrative remedies before instituting § 1983 suits in federal court.

and liberty in pursuit of his profession and livelihood." (Docket No. 7).

The Supreme Court in the case of *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 127, 112 S.Ct. 1061, 1069, 117 L.Ed.2d 261 (1992), stated that a plaintiff's "submission that the [defendant] violated a federal constitutional obligation to provides its employees with certain minimal levels of safety security is unprecedented." In *Collins,* the Supreme Court further stated that

> "We have held, for example, that apart from the protection against cruel and unusual punishment provided by the Eighth Amendment, cf. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees, see *Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 545, 99 S.Ct. 1861, 1872, n. 16, 1877, 60 L.Ed.2d 447 (1979), for persons in mental institutions, *Youngberg v. Romeo,* 457 U.S. 307, 315–316, 102 S.Ct. 2452, 2457–2458, 73 L.Ed.2d 28 (1982), for convicted felons, *Turner v. Safley,* 482 U.S. 78, 94–99, 107 S.Ct. 2254, 2265–2267, 96 L.Ed.2d 64 (1987), and for persons under arrest, see *Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244–245, 103 S.Ct. 2979, 2983–2984, 77 L.Ed.2d 605 (1983). The "process" that the Constitution guarantees in connection with any deprivation of liberty thus includes a continuing obligation to satisfy certain minimal custodial standards. *See DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005. Petitioner cannot maintain, however, that the city deprived [petitioner] of his liberty when it made, and he

voluntarily accepted, an offer of employment.

We also are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense. Petitioner's claim is analogous to a fairly typical state-law tort claim: The [defendant] breached its duty of care to [plaintiff] by failing to provide a safe work environment. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," *Daniels v. Williams,* 474 U.S. at 332, 106 S.Ct. at 665, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law, see, *e.g., id.,* at 332–333, 106 S.Ct. at 665–666; *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship. See, *e.g., Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577–578, 92 S.Ct. 2701, 2709–2710, 33 L.Ed.2d 548 (1972)."

*Id.* at 127–28, 1069–70, 112 S.Ct. 1061.[8] Accordingly, plaintiff's claims under sec-

---

**8.** The Supreme Court also stated that "[t]he Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions. Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm.' " *Collins,* 503 U.S. at 129, 112 S.Ct. at 1070.

tion 1983 for unsafe working conditions must be **dismissed.**

## 2. First Amendment

Plaintiff also brings a § 1983 claim asserting that defendants violated his First Amendment right to freedom of speech by transferring him to other working locations and denying him promotions, among other things, in retaliation for his complaints regarding unsafe working conditions and alleged "irregularities and illegalities in auctions (subastas), including the alteration of documents." (Docket No. 7).

> "The Supreme Court has developed two lines of cases to address the First Amendment rights of public employees. *See McEvoy v. Spencer,* 124 F.3d 92, 97–100 (2nd Cir.1997) (comparing the two means of analyzing government workers' First Amendment claims); *Brinston v. Dunn,* 928 F.Supp. 669, 670–71 (S.D.Miss.1996) (same). One line of cases involves the extent to which the government can take adverse action against an employee because of her political affiliation. *See Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The second line involves government employees who claim to be victims of retaliation taken against them as reprisals for their having spoken out on matters of public concern. *See Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)."

*Mendoza Toro v. Gil,* 110 F.Supp.2d 28, 34 (D.P.R.2000).

Three tests determine whether the court is presented with an actionable claim for the infringement of a public employee's First Amendment rights. First, the Court must determine, on the basis of "the content, form, and context of a given statement, as revealed by the whole record," whether the employee was speaking "as a citizen upon matters of public concern," or, alternatively, "as an employee upon matters only of personal interest." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. "If an employee's speech 'cannot be fairly characterized as constituting speech on a matter of public concern,' then its First Amendment value is low and 'a federal court is not the appropriate forum in which to review the wisdom of a personnel decision' arising therefrom." *O'Connor v. Steeves,* 994 F.2d 905, 912 (1st Cir.1993) (citing *Connick,* 461 U.S. at 146–47, 103 S.Ct. at 1689–90).

Second, if the matter is one of public concern, there must be a balancing of "the strength of the employee's First Amendment interest, and any parallel public interest in the information which the employee sought to impart, against the strength of the countervailing governmental interest in promoting efficient performance of the public service the government agency or entity must provide through its employees." *Id. See Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734.

Finally, "if the court determines that the public employee's First Amendment interests in speaking out outweigh a legitimate governmental interest in curbing the employee speech, the plaintiff-employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision; and, if the plaintiff meets this test, the defendant governmental entity must be afforded an opportunity to show 'by a pre-

ponderance of the evidence that [it] would have reached the same decision ... even in the absence of the protected conduct." *Id.* (citing *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576).

In this case, Plaintiff alleges that he was transferred and denied promotions in retaliation for exercising his First Amendment rights. "Legally adverse personnel decisions include dismissals, promotions, transfers, and other deprivations less harsh than dismissal." *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). *See also Leary v. Daeschner,* 228 F.3d 729, 738 (6th Cir.2000) (involuntary transfer of teacher qualifies as an adverse employment action under First Amendment retaliation analysis).

As to the second element, only plaintiff's allegation that he was subject to retaliation because of his "criticism" regarding defendant's "irregularities and illegalities in auctions (subastas), including the alteration of documents" qualifies as protected speech as a matter of public concern. (Docket No. 7). However, plaintiff's averments that defendants have violated his First Amendment rights as retaliation for his complaints regarding unsafe working conditions does not qualify as a matter of public concern, but one regarding personal working conditions. *See Mendoza Toro,* 110 F.Supp.2d at 35 ("An employee's complaints or grievances regarding personal working conditions are not protected.") (quoting *Tang v. Rhode Island Dep't of Elderly Affairs,* 163 F.3d 7, 12–13 (1st Cir.1998). Finally, plaintiff has pleaded facts to establish that the protected expression was a substantial or motivating factor in the adverse employment decision. *O'Connor,* 994 F.2d at 912. Accordingly, the Court finds that by raising all reasonable inferences in favor of plaintiff and taking all of plaintiff's averments

in the complaint as true, plaintiff has established a cause of action under section 1983 for First Amendment violations.

## 3. Due Process

Plaintiff has failed to specify in what way defendants violated his right to due process. In the amended complaint, plaintiff states that defendants have deprived him "of his right to due process of law, to his life, and liberty in pursuit of his profession and livelihood." (Docket No. 7).

The Fourteenth Amendment Due Process Clause prohibits a state from depriving any citizen of "life, liberty, or property without due process of law." For plaintiff to state a claim for a violation of procedural due process, a plaintiff must (1) assert a protected property or liberty interest, and (2) show that state action deprived him of that interest without due process of law. *See Hajjar v. Dayner,* 96 F.Supp.2d 142, 144 (D.Conn.2000). Hence, plaintiff must first establish that he has a sufficient property interest relating to his employment, before he can seek the enforcement of the protections afforded by procedural due process. *See id.; Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548(1972) (For plaintiffs to have a due process claim, they must have a property interest in their positions.); *Bremiller v. Cleveland Psychiatric Institute,* 879 F.Supp. 782, 791 (N.D.Ohio 1995). In most employment related cases involving section 1983, plaintiff asserts a property interest in employment *per se,* or continued employment. *Id. See Thomas v. Farmer,* 573 F.Supp. 128, 131 (S.D.Ohio 1983). In this case, nothing in the record suggests that plaintiff's employment was terminated. Therefore, even if plaintiff could demonstrate a property interest in continued employment, he cannot prove that he has been deprived of that property

interest, since he has not been suspended or terminated from his employment with defendant. Thus, plaintiff's asserted property interests must pertain to the transfer and promotions.

██ Nevertheless, plaintiff has presented no allegations, whatsoever, to demonstrate that he had an entitlement or a property right in either avoiding transfer to another plant or in being promoted to a different position. Pursuant to relevant law, plaintiff cannot establish a valid § 1983 claim for deprivation of his right to procedural due process, because his claim relates only to involuntary transfer and failure to promote, as opposed to continued employment. *See Murray v. Bd. of Educ. of City of New York*, 984 F.Supp. 169, 183 (S.D.N.Y.1997) (plaintiff had no property right, and thus no right to procedural due process, with respect to her involuntary transfer or failure to be hired as assistant principal); *Anglemyer v. Hamilton County, Hosp.*, 58 F.3d 533, 539 (10th Cir.1995) ("[T]he overwhelming weight of authority holds that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory or contract provision to the contrary"). *See also Hajjar*, 96 F.Supp.2d at 144 (holding that the failure to transfer plaintiff did not implicate protected property interest). Accordingly, because plaintiff has failed to present any evidence indicating that he has a property right relating to transfers or promotions, his claim must fail.

██ Additionally, it is not clear from the record whether Plaintiff asserts a substantive due process claim in addition to a procedural due process claim. However, the Court will address plaintiff's allegations in the complaint as including a cause of action against defendants for substantive due process violations.

██ The substantive due process component of the Fourteenth Amendment protects "specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. It has been established that public employees enjoy no substantive due process right in public employment". *See Bremiller*, 879 F.Supp. 782, 791 (N.D.Ohio 1995)(citing *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir.1992)). Therefore, plaintiff's employment interests as to transfers and promotions in public employment, clearly are not protected by substantive due process. *See Thomson v. Scheid*, 977 F.2d 1017, 1020 (6th Cir.1992) ("the right to a promotion is not a fundamental interest protected by substantive due process"); *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir.1990) (state created contractual right to promotion is not afforded substantive due process protection).

Based on the aforementioned, the Court concludes that plaintiff's claims for violations of his Due Process rights must be dismissed for failure to state a claim upon which relief can be granted.

**E. The Section 1985 Conspiracy Claim**

██ In the complaint, plaintiff avers that defendants conspired to deprive him of his constitutional rights. (Docket No. 7). However, plaintiff has failed to designate the specific subsection of the statute his claim is based on. Section 1985(1) deals with conspiracies to prevent persons from holding office or performing duties of a public office. Section 1985(2) pertains to conspiracies to obstruct justice or to interfere with witnesses. Section 1985(3) deals with conspiracies "intended to deprive an individual or class of persons of protected rights based on 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Burns v. State Police Association of Massachusetts*, 230 F.3d 8, 12 (1st Cir.2000) (citing *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996)) (quoting

*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). In view of the fact that plaintiffs have made no allegation, which even inferentially indicates that any defendant has conspired against plaintiff in order to prevent the holding or performance of duties related to a public office, to obstruct justice or that defendants were motivated by any class-based, invidiously discriminatory animus, plaintiff's claims under section 1985 must be **dismissed.**

### III. CONCLUSION

Based on the aforementioned reasons, defendant's Motion to Dismiss the Amended Complain is hereby **DENIED in part** and **GRANTED in part.** Accordingly, plaintiff's claims against defendants under Title VII, the ADEA, section 1985 (conspiracy claims), and section 1983 for violations of plaintiff's due process rights (substantive and procedural) and for failure to provide safe working conditions are **dismissed with prejudice.**

**IT IS SO ORDERED.**

For administrative purposes this Order disposes of Docket Nos. 3, 7, 8, 13 and 20.