# United States Court of Appeals
## For the First Circuit

No. 02-2172

VICTOR LEBRÓN-RÍOS; BERNICE APONTE-RODRÍGUEZ,

Plaintiffs, Appellants,

v.

U.S. MARSHAL SERVICE; MVM, INC.; LUIS A. TORRES; MARIA CORTES;
CONJUGAL PARTNERSHIP TORRES-CORTES; LUIS A. COMAS; CRISTINA
PAGAN; CONJUGAL PARTNERSHIP COMAS-PAGAN,

Defendants, Appellees,

UNITED STATES DEPARTMENT OF JUSTICE, PUERTO RICO DISTRICT; UNITED
GOVERNMENT SECURITY OFFICERS OF AMERICA, LOCAL 72; CÉSAR TORRES;
BETSY ROSE; CONJUGAL PARTNERSHIP TORRES-ROSE; UNKNOWN INSURANCE
COMPANY X,

Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Benito Gutierrez Diaz was on brief for plaintiffs-appellants.

Jason M. Branciforte and Margarita D. Santos were on brief for
defendants-appellees MVM, Inc. et al.

Miguel A. Fernandez, Assistant United States Attorney, H.S.
Garcia, United States Attorney, and Fidel A. Sevillano del Rio,
Assistant United States Attorney, were on brief for defendant-

appellee U.S. Marshal Service and defendants U.S. Department of Justice and César Torres.

---

August 14, 2003

---

**LYNCH**, **Circuit Judge**.  Bernice Aponte-Rodríguez and her husband, Victor Lebrón-Ríos, appeal the "with prejudice" aspect of the district court's dismissal with prejudice of their employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000).  The district court ordered dismissal because the plaintiffs failed to file charges of discrimination with the Equal Employment Opportunity Commission before bringing suit.  We hold that the district court's dismissal should have been without prejudice to any later Title VII action brought by the plaintiffs on properly exhausted claims.  Accordingly, we vacate and remand to the district court to clarify its order of dismissal.

**I.**

Because the district court dismissed plaintiffs' claims under Fed. R. Civ. P. 12(b)(6), we accept as true all well-pleaded facts alleged by the plaintiffs in their complaint, drawing in their favor all reasonable inferences fitting their theory of liability.  Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 107-08 (1st Cir. 2002).

On September 23, 1999, plaintiff Lebrón-Ríos began working for MVM, Inc. ("MVM"), a private company that provides security personnel to the U.S. Marshal Service in Puerto Rico and elsewhere in the United States.  MVM employed Lebrón-Ríos as a court security officer ("CSO") at the United States District Court

-3-

for the District of Puerto Rico. On April 25, 2001, plaintiff Aponte-Rodríguez was likewise hired by MVM and assigned to work as a CSO at the same federal courthouse. Aponte-Rodríguez was one of only six or seven female CSOs in Puerto Rico; most women previously hired as CSOs in Puerto Rico lasted only a brief time in the position. Although Aponte-Rodríguez and Lebrón-Ríos apparently did not previously know each other, they met while on the job and the two were eventually married.

After she was hired, Bernice Aponte-Rodríguez began to receive unwanted sexual overtures from Luis Torres, the MVM site supervisor for the Puerto Rico federal courthouse and, it appears, the plaintiffs' ultimate supervisor.[1] According to the complaint, Luis Torres personally ensured that Aponte-Rodríguez was hired as a CSO because, as he told others, "he was very [fond] of her and wanted to go to bed with her, as he has done with some other women assigned to the same job assignment in Puerto Rico with M.V.M.,

---

[1] Luis Torres is identified in the plaintiffs' complaint and in the parties' papers only as the "site supervisor" for MVM in Puerto Rico. His formal title and responsibilities are not made clear. It is apparent from the plaintiffs' allegations, however, that Luis Torres acted as MVM's chief representative at the federal courthouse in Puerto Rico, and that in this capacity he supervised the plaintiffs, their immediate managing supervisors, and other MVM employees at the courthouse.
Luis Torres is not to be confused with Deputy U.S. Marshal César Torres, who acts as the liaison between MVM and the U.S. Marshal Service at the federal district court in Puerto Rico. Both men were named as defendants. According to the complaint, Luis Torres committed most of the acts of harassment, while César Torres allegedly ignored Aponte-Rodríguez's complaints and neglected to report Luis Torres's misdeeds.

-4-

Inc. for many years back." By sleeping with him, Aponte-Rodríguez would, in his view, "compensate[]" him for his "generosity" in arranging for her employment. Sometime after she was hired, Aponte-Rodríguez was ordered to report to Luis Torres's office for "training." There was no training -- Luis Torres just asked her to sit near him and repeatedly invited her to share breakfast or lunch. Whenever he saw Aponte-Rodríguez, Luis Torres tried to get as physically close as possible. He praised the color of her lipstick and frequently commented on her hair and makeup. Once, Luis Torres ran his hands over Aponte-Rodríguez's hair and expressed his delight at its softness. On another occasion, he touched the back of her neck. Aponte-Rodríguez loudly protested and moved to avoid further contact. Nevertheless, Luis Torres persisted, often calling her and asking her to visit his office.

When Luis Torres discovered that Aponte-Rodríguez was romantically involved with Lebrón-Ríos, he was furious. Himself a married man, Luis Torres informed Lebrón-Ríos that he wanted Aponte-Rodríguez to be his "mistress" and ordered Lebrón-Ríos to stop interfering. When Lebrón-Ríos refused, Luis Torres began openly telling other MVM employees that he was going "to make . . . Lebrón-Ríos pay" for interfering with his efforts to make Aponte-Rodríguez his mistress. Lebrón-Ríos found himself abruptly removed from his usual work post; his work schedule was also altered. He was reassigned to work with a female CSO with whom he had

previously been in a relationship. Lebrón-Ríos applied to transfer to the federal district court for the Virgin Islands, but his application was mysteriously turned down when Aponte-Rodríguez applied to transfer to the same district. Lebrón-Ríos was even ordered to relay messages from Luis Torres to Aponte-Rodríguez.

Plaintiffs timely notified MVM of their mistreatment by fax and by certified mail, in compliance with MVM's established procedures for reporting harassment. The company requested time to investigate, to which the plaintiffs agreed, but the investigation yielded no results. In addition, Aponte-Rodríguez apparently complained personally to Deputy U.S. Marshal César Torres, the liaison between MVM and the U.S. Marshal Service, but he did not intervene. The plaintiffs' union, United Government Security Officers of America, likewise refused to get involved. Plaintiffs even sent notice of their harassment by fax and certified mail to the U.S. Marshal Service, which plaintiffs allege has supervisory responsibility for CSOs employed at the federal courthouse in Puerto Rico. But the Marshal Service did not act on the complaint.

Both plaintiffs were closely monitored by Luis Torres and by other supervisors, and Luis Torres repeatedly told Lebrón-Ríos that he wanted him out of the CSO service in Puerto Rico. Luis Torres shuffled the couple's work schedules so that Lebrón-Ríos and Aponte-Rodríguez would not see each other at the courthouse, and so that Luis Torres could be alone with Aponte-Rodríguez. The stress

eventually sent Lebrón-Ríos to the hospital with high blood pressure. When Lebrón-Ríos was released, Aponte-Rodríguez stayed home with him for a day. Although she had duly informed her immediate supervisor of her intent to do so, she was punished for her absence with one day off-duty. Meanwhile, MVM ordered Lebrón-Ríos to undergo a complete medical exam. On December 19, 2001, the day Aponte-Rodríguez served her off-duty penalty, she received a call from MVM ordering her not to report back to work until further notice.[2] Around the same time, the company suspended Lebrón-Ríos indefinitely, claiming he was medically unfit for duty. Plaintiffs characterize these acts as constructive discharge in retaliation for their complaints about Luis Torres's conduct.

On December 21, 2001, Aponte-Rodríguez and Lebrón-Ríos brought suit in the U.S. District Court for the District of Puerto Rico against MVM, Luis Torres, and other MVM supervisors ("the MVM defendants"); the U.S. Marshal Service, the Department of Justice, and Deputy U.S. Marshal César Torres ("the federal defendants"); and other parties.[3] Alleging sexual harassment and retaliation in

---

[2] Insofar as the record reveals, Aponte-Rodríguez was never invited to return to work. Elsewhere in the complaint, however, plaintiffs inconsistently assert that after Lebrón-Ríos was suspended, Aponte-Rodríguez "was kept working in her regular schedule and supervised by the same people she [had accused] of sexual harassment."

[3] Plaintiffs also named their union, Local 72 of United Government Security Officers of America, as a defendant, alleging that the union violated the Taft-Hartley Act, 29 U.S.C. § 151 et seq. (2000), by failing to act on plaintiffs' complaints and by

violation of Title VII by the MVM and federal defendants, as well as violations of other federal and state laws by all defendants,[4] they sought injunctive relief, reinstatement, damages for emotional distress and other injuries, and back pay.

Plaintiffs neglected, however, to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtain a right-to-sue letter before bringing their lawsuit.  See 42 U.S.C. § 2000e-5(e)(1) (2000).  On January 30, 2002, the MVM defendants filed a motion to dismiss, contending, inter alia, that the plaintiffs had failed to exhaust administrative remedies under Title VII.  Plaintiffs did not file a timely response.  On April 19, 2002, the plaintiffs finally submitted a belated motion requesting an extension of time to file

failing to represent plaintiffs in this action.  The district court initially dismissed this claim when plaintiffs failed to respond to Local 72's motion to dismiss for improper service.  The court later reconsidered this order and gave the plaintiffs ten days to identify the section of the Taft-Hartley Act that they believed Local 72 violated.  When the plaintiffs failed to respond within the allotted ten days, however, the court entered judgment in favor of Local 72.  Plaintiffs do not appeal this aspect of the district court's decision.

In addition to the MVM defendants, the federal defendants, and Local 72, plaintiffs named as defendants the spouses and conjugal partnerships of the individual defendants, as well as an unspecified insurance company.

[4] With respect to the MVM defendants and the federal defendants, plaintiffs also alleged violations of 42 U.S.C. § 1981 (2000) and Puerto Rico Law No. 17, 29 P.R. Laws Ann. § 155 (2002). As to Local 72, the plaintiffs asserted violations of the Taft-Hartley Act, 29 U.S.C. § 151 et seq., as noted supra note 3. Plaintiffs also asserted a right to relief for unspecified "personal tort actions."

an opposition. Without ruling on plaintiffs' motion to extend, the district court granted the MVM defendants' underlying motion to dismiss on April 26, 2002. Although the court did not specify in its opinion whether the dismissal would be with or without prejudice, its entry of partial judgment on April 26 for the MVM defendants expressly termed the dismissal "with prejudice."

On May 7, the district court recognized that it had not ruled on plaintiffs' motion to extend. The court vacated its partial judgment for the MVM defendants and gave plaintiffs ten days to show cause why the court should reconsider its ruling on MVM's motion to dismiss. On June 11, plaintiffs responded, admitting that they had failed to exhaust and asking that the court convert its partial judgment for the MVM defendants to an order dismissing plaintiffs' Title VII claims without prejudice. Plaintiffs explained, albeit inartfully, that the applicable 300-day limitations period for filing a charge with the EEOC had not yet expired,[5] and that the dismissal with prejudice would likely

---

[5] Plaintiffs had 300 days to file with the EEOC, rather than the usual 180, because Puerto Rico is a so-called "deferral" jurisdiction. See 42 U.S.C. § 2000e-5(e); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 n.4 (1st Cir. 1999). Taking the allegations in plaintiffs' complaint as true, the limitations period may have begun to run on December 19, 2001, the date of plaintiffs' alleged constructive discharge from MVM. Their deadline for filing with the EEOC was therefore October 15, 2002, well after the district court granted dismissal.

It is difficult to understand why plaintiffs, once alerted to their failure to exhaust by the MVM defendants' January 30, 2002 motion to dismiss, did not initiate administrative proceedings without waiting for the district court to dismiss the case.

bar them from bringing an otherwise proper Title VII action after exhausting their administrative remedies. The MVM defendants have not contended that the period for filing with the EEOC had expired.[6]

Unmoved, the district court denied the motion for reconsideration on July 30, 2002. Citing three cases, the court asserted that "[d]ismissals for violations of statutory rules in similar situations have been treated as being on the merits and dismissed with prejudice."[7] But the court went on to explain that

_____

[6] Whether the limitations period had expired, moreover, is not for us to decide. Unless it is patently clear -- and here it is not -- that an administrative charge would be time-barred, the question whether the charge is timely (and if so, as to which defendants) is a matter for the responsible agency in the first instance, and for the district court in the next. Here, the district court did not address this issue and neither do we.

[7] For this proposition, the court cited In re Reed, 861 F.2d 1381 (5th Cir. 1988), Siaca v. Autoridad de Acueductos y Alcantarillados, 160 F.Supp.2d 188 (D.P.R. 2001), and Maldonado-Cordero v. AT&T, 73 F.Supp.2d 177 (D.P.R. 1999). None of these cases is pertinent. Reed concerns neither Title VII nor administrative exhaustion; it holds simply that dismissal for failure to comply with discovery orders is a final judgment on the merits for purposes of res judicata. Id. at 1382-83. Siaca does concern the dismissal of a civil rights action for failure to exhaust administrative remedies, but in circumstances quite unlike the facts of the instant case -- the plaintiff in Siaca sought to assert claims in federal court that he had not raised in his charge filed with the EEOC, and there was no suggestion that the plaintiff still had time to cure the omission. Id. at 194-95. Maldonado-Cordero involves the dismissal with prejudice of Title VII claims for various defects in the plaintiffs' efforts to exhaust administrative remedies, most of which could not have been timely cured. Id. at 186-90. With respect to the remaining claims, the plaintiffs in Maldonado-Cordero were still in the process of exhausting EEOC procedures. Significantly, as to those claims the court ordered dismissal without prejudice to any litigation after

-10-

its April 26 grant of partial judgment for the MVM defendants "was based on [plaintiffs'] failure to comply with the EEOC requirements.  The Court decided that issue on its merits; therefore the dismissal is with prejudice."  On this basis, the court denied plaintiffs' motion.[8]

On August 19, 2002, the district court entered final judgment against Aponte-Rodríguez and Lebrón-Ríos on all of their claims <u>with prejudice</u>.  On appeal, they challenge only the district court's dismissal of their Title VII claims.[9]  Moreover, plaintiffs attach to their appellate brief copies of administrative charges of discrimination that, they say, they filed with the EEOC on August 12, 2002.

## II.

We review the district court's dismissal under Rule 12(b)(6) de novo.  <u>Torres-Viera</u>, 311 F.3d at 107; <u>Alternative</u>

---

exhaustion.  <u>Id.</u> at 187-88.

[8]  By the same July 30 opinion and order, the district court also dismissed plaintiffs' Title VII claims against the federal defendants "for the same reasons it granted the other co-defendants' motion" -- failure to exhaust administrative remedies. Again, the court expressly termed its dismissal "with prejudice."

[9] Plaintiffs' August 12, 2002 notice of appeal indicates that they initially intended to challenge the district court's dismissal of all of their claims against all defendants, with the exception of their claims under the Taft-Hartley Act against Local 72.  On January 29, 2003, however, plaintiffs moved to consolidate the issues and present the prejudice question alone.  In any event, their brief addresses only the prejudice question, and that is the only issue we address.

Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

At the outset, it is plain from our review of the complaint that apart from the question of administrative exhaustion, Aponte-Rodríguez and Lebrón-Ríos have stated viable claims for relief under Title VII, at least against MVM and Luis Torres. See generally O'Rourke v. City of Providence, 235 F.3d 713, 728-31 (1st Cir. 2001) (discussing liability for hostile work environment sexual harassment); White v. N.H. Dep't of Corr., 221 F.3d 254, 262 (1st Cir. 2000) (discussing retaliation claims). At the same time, the district court was correct in holding that plaintiffs could not proceed under Title VII without first exhausting administrative remedies. See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999) (noting that the exhaustion of EEOC procedures is a prerequisite to suit under Title VII).

The exact import of the district court's July 30, 2002 opinion and order is unclear, and there appears to be some confusion in the applicable law. If the district court meant only that the dismissal was with prejudice as to the issue of plaintiffs' failure to exhaust, the district court was correct. If, however, the district court also meant that the dismissal with prejudice would bar plaintiffs from bringing a Title VII claim after the EEOC processed their timely filed charges, then it was

incorrect. While district courts are normally under no compulsion to specify the precise issues to which the "with prejudice" label applies, we think that given the confusion here, it would have been better had the district court made clear which issues the plaintiffs would be precluded from relitigating: the dismissal was with prejudice solely as to the question whether plaintiffs had failed to exhaust administrative remedies before filing their civil action under Title VII. Such a clarification would have obviated the need for this appeal.

Several considerations motivate our conclusion that dismissal of plaintiffs' Title VII claims should have been without prejudice to any civil action filed after exhaustion of administrative remedies. First, we think this result is suggested, though admittedly not dictated, by the Supreme Court's opinion in Costello v. United States, 365 U.S. 265 (1961). In Costello, the Court held that the dismissal of a prior denaturalization proceeding due to the government's failure to file an affidavit of good cause constituted a dismissal "for lack of jurisdiction" under Fed. R. Civ. P. 41(b), and thus did not operate as an adjudication upon the merits.[10] 365 U.S. at 284-88. Strictly speaking, of

_____

[10] In pertinent part, Rule 41(b) provides:
Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, . . . operates as an adjudication upon the merits.
The district court here did cite Rule 41(b), but it may have been

-13-

course, this provides little help to the plaintiffs here, whose case arises in a different procedural posture. But in reaching its decision, the Costello Court discussed with approval the long-standing common-law principle governing the preclusive effect of dismissals ordered prior to reaching the merits:

> At common law[,] dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim. . . . [This] view applied to many dismissals on the motion of a defendant. In Hughes v. United States, [71 U.S. (4 Wall) 232, 237 (1866)], it was said: "In order that a judgment may constitute a bar to another suit, it must be [. . .] determined on its merits. If the first suit was dismissed for defect of pleadings, or parties or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit."
> We do not discern in Rule 41(b) a purpose to change this common-law principle with respect to dismissals in which the merits could not be reached for failure of the plaintiff to satisfy a [statutory] precondition.

Id. at 286 (internal citations omitted). Like the government in Costello, Aponte-Rodríguez and Lebrón-Ríos have failed to satisfy a statutory precondition to suit. See 42 U.S.C. § 2000e-5(e)(1). Moreover, at the time of the district court's dismissal, no tribunal, administrative or judicial, had yet considered the merits of plaintiffs' Title VII claims. Given the preclusion principles articulated by the Court in Costello, the district court's dismissal of plaintiffs' claims on exhaustion grounds could not

---

mistaken in what it regarded as the "merits" of the issue before it.

prejudice a subsequent hearing on the merits of properly exhausted claims.

Of course, as MVM argues, the Supreme Court later held in Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), that the administrative exhaustion requirement of Title VII is not strictly jurisdictional, but rather is more in the nature of a statute of limitations. Id. at 393; see also McKinnon v. Kwong Wah Rest., 83 F.3d 498, 505 (1st Cir. 1996). And dismissals for failure to comply with a statute of limitations, MVM points out, are ordinarily with prejudice. See Kale v. Combined Ins. Co., 924 F.2d 1161, 1164 (1st Cir. 1991) (describing this proposition as "beyond peradventure"); Rose v. Town of Harwich, 778 F.2d 77, 80 (1st Cir. 1985) (Breyer, J.) (collecting cases). All of this is true, but it is also beside the point. Plaintiffs in the instant case have not failed to act within the prescribed period. On the contrary, they appear to have filed charges with the EEOC that may be timely. That is a question for the EEOC.

Second, this court has repeatedly preferred dismissal without prejudice in analogous circumstances. In Weber v. Cranston School Committee, 212 F.3d 41 (1st Cir. 2000), for example, the district court dismissed a civil rights claim because the plaintiff failed to exhaust administrative remedies under the Individuals with Disabilities in Education Act ("IDEA"). Like Aponte-Rodríguez and Lebrón-Ríos, the plaintiff in Weber was not yet barred from

-15-

seeking administrative relief at the time her claim was dismissed. This court upheld the dismissal of her claim, but added that "we affirm without prejudice as to any future action Weber might bring after satisfying the exhaustion requirement." Id. at 54; see also Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 31-35 (1st Cir. 2000) (vacating a dismissal with prejudice and remanding for dismissal "without prejudice to refiling after exhaustion" of tribal remedies); Attallah v. United States, 955 F.2d 776, 778 & n.1 (1st Cir. 1992) (explaining that plaintiffs were permitted to refile a Federal Tort Claims Act suit after the district court dismissed without prejudice to allow completion of administrative review); Ezratty v. Commonwealth of P.R., 648 F.2d 770, 774-778 (1st Cir. 1981) (Breyer, J.) (affirming the dismissal of a claim under the Education for All Handicapped Children Act of 1975 for failure to exhaust administrative remedies and reiterating that dismissal was without prejudice to refiling after exhaustion).

MVM emphasizes our oft-quoted statement in Bonilla, 194 F.3d at 278, that failure to exhaust administrative remedies "bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of suit." But we explicitly noted in Bonilla that the plaintiff had failed to file a charge with the EEOC "within the prescribed time limits." Id. The period for filing a charge had

-16-

lapsed. In this case, by contrast, plaintiffs assert that they still had an opportunity to file timely administrative charges at the time the district court dismissed their claims. Consistent with our opinion in <u>Bonilla</u>, therefore, the courthouse door should have been left unbarred to future, exhausted claims.[11]

Finally, dismissal without prejudice to a future action on exhausted claims both makes practical sense and comports with the remedial purposes of Title VII. If the EEOC, as the agency charged with administering enforcement of Title VII, would permit plaintiffs' claims to proceed, little purpose is served by denying them the opportunity to have a federal court consider the merits of their asserted right to relief after the EEOC has processed their charges.[12] This policy is particularly important in construing the filing requirements under Title VII, "a statutory scheme in which laymen, [often] unassisted by trained lawyers, initiate the

---

[11] A case relied upon by the district court, <u>Triple-S, Inc.</u> v. <u>Pellot</u>, 41 F.Supp.2d 122 (D.P.R. 1999), is similarly inapposite. The question in <u>Triple-S</u> was not whether prejudice should attach to a dismissal for failure to exhaust, but rather the propriety of a relitigation injunction based on the dismissal of pendent state-law claims in an earlier Title VII action. <u>Id.</u> at 124. In that earlier litigation, this court did affirm the dismissal with prejudice of a Title VII action for failure to exhaust, but only because the plaintiff had not filed an administrative charge <u>at any time</u> during the prescribed period and equitable tolling did not apply. <u>See</u> <u>id.</u> at 124-25.

[12] MVM objects that the defendants will suffer "substantial[] prejudice" if plaintiffs are now permitted to pursue administrative remedies. It is difficult to comprehend what, if any, unfair prejudice defendants would suffer from the filing of a <u>timely</u> administrative charge.

process." Love v. Pullman Co., 404 U.S. 522, 527 (1972); see also Isaac v. Harvard Univ., 769 F.2d 817, 822, 826 (1st Cir. 1985) (endorsing this approach). Surely Congress, in requiring that claims be filed first with the EEOC, did not intend to foreclose all relief for those who mistakenly challenge illegal employment discrimination too early rather than too late.[13]

In this case, the district court simply did not address the merits of plaintiffs' substantive claims. It reached only the question whether exhaustion is required. As to the exhaustion question, the district court was quite correct to state that "[t]he Court decided [the] issue on its merits; therefore the dismissal is with prejudice." Indeed, this may have been all that the district court intended. Because the district court's order can be understood to dismiss plaintiffs' substantive Title VII claims with prejudice as well, however, we vacate the order and remand for clarification.

We also note that the federal defendants did not make the same Title VII exhaustion argument as the MVM defendants, but instead contended that they are protected by a forty-five-day limitations period under 29 C.F.R. § 1614.105(a)(2) (2003) that the

_____

[13] Cf. Snider v. Melindez, 199 F.3d 108, 112 (2d Cir. 1999)("We do not think that the [Prison Litigation Reform Act] was meant to impose a strike upon a prisoner who suffers a dismissal because of the prematurity of his suit but then exhausts his administrative remedies and successfully reinstitutes it.").

-18-

plaintiffs failed to satisfy.[14]  The district court did not address this argument.  On remand, the court should consider the federal defendants' motion to dismiss anew, focusing on the arguments it has not yet addressed.

### III.

The district court's order dismissing plaintiffs' Title VII claims with prejudice is **vacated** and the case is **remanded** for entry of an order of dismissal consistent with this opinion as to the MVM defendants, and for reconsideration of the federal defendants' motion to dismiss.

---

[14] The federal defendants also made independent arguments, including that they are not plaintiffs' "employers" within the meaning of Title VII, that the U.S. Marshal Service is not a proper party, and that other asserted causes of action failed to state a claim.  The district court touched on a few of these arguments in its July 30, 2002 opinion, failed to address others, and then dismissed the entire action with prejudice.  Notwithstanding the problems with this approach, all claims except the Title VII claims are now gone from the case because plaintiffs abandoned those issues by declining to argue them on appeal.