# United States Court of Appeals

## For the First Circuit

No. 06-1132

EDMOND A. FREDERIQUE-ALEXANDRE,

Plaintiff, Appellant,

v.

DEPARTMENT OF NATURAL AND ENVIRONMENTAL RESOURCES OF THE
COMMONWEALTH OF PUERTO RICO; NATURAL RESOURCES ADMINISTRATION;
LUIS RODRÍGUEZ-RIVERA; FRANCIS NIEVES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl and Baldock,* Senior Circuit Judges.

Charles S. Hey-Maestre with whom De Jesús, Hey & Vargas was on
brief for appellant.
Susana I. Peñagaricano-Brown, Assistant Solicitor General,
with whom Salvador J. Antonetti-Stutts, Solicitor General, Mariana
Negrón-Vargas and Maite D. Oronoz-Rodríguez, Deputy Solicitors
General, were on brief for appellees.

March 1, 2007

*Of the Tenth Circuit, sitting by designation.

**STAHL**, **Senior Circuit Judge**.   The outcome of this employment discrimination case hinges largely on two basic requirements of litigating a Title VII claim in federal court, timeliness and the submission of documents in the English language. We affirm the district court's dismissal of plaintiff's Title VII discrimination and hostile work environment claims for failure to timely file within the statutory period.   Plaintiff bases his assertion of timeliness on a document submitted to the court in the Spanish language, without an accompanying English translation, despite ample time and opportunity to provide such a translation. We cannot consider that document's impact on the question of the timeliness of his claim.   We also affirm the district court's grant of summary judgment as to plaintiff's Title VII retaliation claim and Puerto Rico Law 426 claim.

Plaintiff Edmond Frederique-Alexandre ("Frederique") brought a variety of discrimination claims against his former employer, the Department of Natural and Environmental Resources of the Commonwealth of Puerto Rico (DNER), and other defendants.[1]   The district court granted defendants' motion for partial summary judgment and dismissed the action in its entirety.   Frederique appeals the district court's grant of summary judgment as to: (1)

---

[1]The other defendants in this action are Puerto Rico's Natural Resources Administration, Luis Rodríguez-Rivera, and Francis Nieves.

the Title VII discrimination and hostile work environment claims; (2) the Title VII retaliation claim; and (3) the Puerto Rico Law 426 claim.[2]  Because Frederique appeals from the district court's grant of summary judgment, we employ a de novo review, drawing all reasonable factual inferences in favor of the nonmoving party. See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 42 (1st Cir. 2002).

## A. The Discrimination and Hostile Workplace Claims

Frederique, a native of Haiti and an agronomist by training, began his employment with the DNER in 1992.  He alleges that his former supervisor, José González-Liboy ("González"), repeatedly harassed and belittled him and denied him career advancement based on his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[3]

In 1996, Frederique filed an administrative charge ("First Charge") with the Anti-Discrimination Unit (ADU) of the Puerto Rico Department of Labor and Human Resources and the Equal Employment Opportunity Commission (EEOC) alleging national origin

---

[2]Frederique has not appealed the dismissal of his civil rights claims under 42 U.S.C. §§ 1983 and 1988, or his constitutional claims regarding due process, equal protection, and free expression, and thus the issues are waived.

[3]Frederique's complaint alleges that González:  (1) gave Frederique only insignificant tasks, despite Frederique's request for substantive assignments; (2) made derogatory comments and jokes about Frederique's language, accent, culture, and country of origin; (3) gave Frederique undeserved negative evaluations; and (4) did not consider Frederique for raises or promotions.

discrimination. Frederique subsequently withdrew the First Charge, allegedly because González pressured him to do so and promised to improve his conduct. However, Frederique alleges that after he withdrew the First Charge, González's discriminatory behavior continued, resulting in his filing a second administrative complaint ("Second Charge") with the EEOC on October 31, 2000. As to this claim, the EEOC issued a favorable determination on the merits and issued a right-to-sue letter in 2003. Frederique subsequently brought this action in United States District Court for the District of Puerto Rico.

In his complaint filed in this action, Frederique stated that González's discriminatory behavior "continued until the year 1999 when González Liboy left the agency." Frederique repeated this 1999 date in the plaintiff's version of the facts contained in the Supplemental Joint Case Management Memorandum and in his opposition to defendants' motion for summary judgment. The 1999 date is critical for our timeliness analysis.

Under 42 U.S.C. § 2000e-5(e)(1), a Title VII plaintiff is required to file an administrative charge with the EEOC within either 180 or 300 days after the "alleged unlawful employment practice occurred." Because Puerto Rico is a so-called "deferral" jurisdiction, the administrative charge must be filed within 300

days of the alleged unlawful conduct.[4]  See Rivera v. Puerto Rico Aqueduct and Sewers Auth., 331 F.3d 183, 188 (1st Cir. 2003).  In his complaint, Frederique alleged that the harassment against him ended when González left the agency, sometime in 1999.  Even assuming that the last act of alleged discrimination occurred on December 31, 1999, Frederique would only have had until October 26, 2000 to file his administrative charge with the EEOC.  He missed this mark by five days, filing on October 31, 2000.

The Supreme Court has said that the timeliness requirement under 42 U.S.C. § 2000e-5(e)(1) is "mandatory," and failure to file within the time period means a potential plaintiff "lose[s] the ability to recover for [the alleged discrimination]." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 110 (2002).  We see no recognized equitable basis for tolling the 300-day period in this case, nor does Frederique suggest that such a basis exists.  See Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC . . . is subject to waiver, estoppel, and equitable tolling."); Jones v. City of Somerville, 735 F.2d 5, 8 (1st Cir. 1984) ("In the

---

[4]Under 42 U.S.C. § 2000e-5(e)(1), a plaintiff may not recover "for discrete acts of discrimination or retaliation that occur outside the statutory time period," but in the case of a hostile work environment claim, the court may properly consider the entire scope of the claim, "including behavior alleged outside the statutory time period . . . so long as an act contributing to that hostile environment takes place within the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002).

absence of a recognized equitable consideration, the limitation period cannot be extended by even one day.").

On this appeal, in an attempt at salvaging the timeliness of his claims, Frederique now points to the document he submitted to the district court in April 2004, in response to defendants' motion to dismiss, and which he also appended to his response to defendants' motion for summary judgment. The document is a preprinted EEOC form entitled "Charge of Discrimination," which Frederique submitted to the EEOC on October 31, 2000, when he filed his Second Charge. The form's preprinted language appears in both English and Spanish. However, all of Frederique's responses are written in Spanish alone. In the box entitled "FECHA DE ULTIMO ACTO DISCRIMINATORIO/Date most recent or continuous discrimination took place," Frederique entered "Septiembre 14, 2000." Frederique argues that the form establishes that the last act of discrimination occurred on September 14, 2000, which he alleges is the true date that González left the DNER. He further avers that the 1999 date for González's departure, which he relied upon in his complaint and repeated in two later court filings, was merely a "clerical error" and that his submission of the "Charge of Discrimination" form to the district court constituted a "constructive amendment" of his complaint under Rule 15(b) of the Federal Rules of Civil Procedure. Thus, Frederique concludes, there was only a one-and-a-half-month gap between the last act of

discrimination and his filing of the Second Charge, well within the 300-day requirement.

However, Frederique argues to no avail. In this circuit, we have repeatedly reminded litigants that "[t]he law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English," and that untranslated documents are not part of the record on appeal. Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004); see also 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."). We have also confirmed that this rule applies equally to trial and pre-trial proceedings. See Estades-Negroni, 359 F.3d at 2. While ignorance of this rule would not excuse a failure to translate documents, in this case it appears that Frederique was well aware of this requirement because he filed, along with his opposition to defendants' motion for summary judgment, a motion requesting leave to file Spanish language documents and time to obtain certified English translations. Six months passed between the plaintiff's motion to submit the translations and the district court's dismissal of his claims for failure to timely file. During those six months, plaintiff did not submit translations of any documents, including the "Charge of Discrimination" form. In sum, because Frederique failed to submit an English-language version of the "Charge of Discrimination" form, the date he entered in Spanish

on that form is not part of the record and does not impact our above analysis of the timeliness of his claims.

In an attempt to avoid the statutory time bar, which was implicated by the 1999 date clearly set forth in his own filings (the complaint, the case management memorandum, and the opposition to the motion for summary judgment), Frederique makes one final, abbreviated argument. He contends that he suffered "unfair surprise" because the district court did not give him "the opportunity to be heard on [the] 'fact' issue regarding the filing of the administrative charge." The "fact" issue to which Frederique refers is a purported typographical error by counsel which stated that the final act of discrimination occurred in 1999, rather than 2000 as Frederique now avers.

At first glance, Frederique's argument appears to have some attraction. DNER moved for summary judgment only on the constitutional claims, the Title VII retaliation claim, individual liability for the first Title VII claim, and the Puerto Rican law claim. Notably, DNER did not move for summary judgment on official liability for the first Title VII claim. Nevertheless, the district court granted summary judgment on all of Frederique's claims, including a sua sponte grant as to official liability on the first Title VII claim. We have said before that "[t]hough a district court may enter summary judgment sua sponte at, or in consequence of, a pretrial conference, the court must ensure that

-8-

the targeted party has an adequate opportunity to dodge the bullet." Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996). Thus, Berkovitz imposes two conditions on a grant of summary judgment. First, "a district court ordinarily may order summary judgment on its own initiative only when discovery is sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts." Id. Berkovitz also requires that "the court may enter summary judgment sua sponte only if it first gives the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense." Id.

Here, the first Berkovitz requirement is quite clearly satisfied; discovery had proceeded to the point where DNER was able to move for partial summary judgment. As to the second requirement, however, Frederique now claims that he did not have notice as to the grounds on which the court granted summary judgment, and that as a result he had no chance to present evidence on the timeliness issue.

In a way, Frederique's claims seem odd; he had more than ample opportunity to be heard on the issue of when the last act of discrimination occurred. It was he who submitted the 1999 date to the court in three separate filings, the last of which was his response to defendants' motion for summary judgment; and it was he who had the opportunity to seek to amend his complaint at various

junctures, either as of right or later by leave of the court. In addition, Frederique had abundant notice that timeliness was an issue; in fact, DNER had moved to dismiss the case in the first instance on just these grounds. Nevertheless, the district court did grant summary judgment without giving Frederique additional notice that timeliness was an issue, and therefore Frederique did not have a further opportunity to present his opposition. It is not clear here whether additional notice and opportunity were required because of the significant prior notice that Frederique had in fact received on the issue. Importantly, this case differs from Berkovitz in that Frederique does not complain that he lacked the opportunity to raise a genuine issue of material fact as between himself and the defendants, but only that he allegedly misstated, on several occasions, an essential element of his claim.

Frederique's only basis for claiming that his first three pleadings contained a typographical error is the unsupported assertion of counsel. Frederique points to untranslated documents in the record as evidence of the error, but as we have often stated, litigation in federal courts must be conducted in English. Estades-Negroni, 359 F.3d at 2. Because Frederique forfeited his opportunity to amend the pleadings despite receiving notice that timeliness was at issue, because all of his formal filings contained the 1999 date, and because he has not pointed to anything in the record that supports his allegation that the last date of

discrimination occurred in 2000, we will not reverse the district court's grant of summary judgment on this claim.

## B. The Retaliation Claim

Frederique also appeals the district court's grant of summary judgment as to his retaliation claim, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Frederique alleges that the DNER and various individual employees retaliated against him for filing the Second Charge with the EEOC by not hiring him for a Forest Service Director position. On December 18, 2003, Frederique filed a third complaint with the EEOC ("Third Charge") detailing this retaliation allegation. Although he had not yet received a right-to-sue letter from the EEOC, Frederique brought a Title VII retaliation claim against defendants as part of this action. The district court granted summary judgment as to this claim because it was brought prematurely, before issuance of the right-to-sue letter. We agree, for substantially the reasons outlined by the district court.

A plaintiff must exhaust his administrative remedies, including EEOC procedures, before proceeding under Title VII in federal court. See Lebrón-Ríos v. U.S. Marshal Serv., 341 F.3d 7, 13 (1st Cir. 2003). While Frederique is correct that the exhaustion requirement is not a jurisdictional prerequisite, but rather is subject to waiver, estoppel, and equitable tolling, see Zipes, 455 U.S. at 393 (1982), he makes no persuasive argument that

-11-

the facts or equities favor a waiver in this case. He only suggests that no purpose would be served by permitting the EEOC to conduct a conciliation process regarding his Third Charge because prior efforts to resolve Frederique's other complaints have been "futile." This circuit has taken a "'narrow view' of equitable exceptions to Title VII" exhaustion requirements, Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 185 (1st Cir. 1989) (quoting Earnhardt v. Commonwealth of Puerto Rico, 691 F.2d 69, 71 (1st Cir. 1982)), and Frederique's proffered reason -- alleged futility -- is not sufficient to "bring [his claim] within that tiny sphere," Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 279 (1st Cir. 1999). Therefore, we affirm the district court's grant of summary judgment without prejudice as to this claim.

**C. Law 426 Claim**

Frederique also brought a supplemental claim against defendants under Puerto Rico Law 426, P.R. Laws Ann. tit. 1, § 601 (2000). The district court granted summary judgment as to this claim, concluding that Law 426 is meant to protect whistleblowers who report acts of public corruption, whereas Frederique failed to identify any information he had disclosed regarding public financial malfeasance. We agree. Though Frederique attempts to broaden the statute to include public employees who "denounce unlawful acts," the statute does not permit such a far-ranging

interpretation. The statute's statement of purpose reads as follows:

> The purpose of this chapter is to adopt measures for the protection of the rights of public employees and officials who disclose information or testify on alleged improper or illegal acts <u>regarding the use of public property or funds</u> that due to their nature constitute acts of <u>government corruption</u>, or that fall within the ethical conduct regulated by our legal system.

P.R. Laws Ann. tit. 1, § 601 (2000) (emphasis added). The record shows that Frederique has only alleged facts related to the discrimination and harassment he allegedly suffered based on his national origin. He makes no allegation that he ever witnessed or reported the misuse of public property or funds. Therefore his claim under Law 426 lacks any factual foundation and was properly dispatched by the district court.

**D. Conclusion**

For the foregoing reasons, we <u>affirm</u> the district court's grant of summary judgment as to all claims. Costs to appellees.